**138]** *EXECUTOR OF OLIVER BIGELOW *v.* ADMINISTRATORS OF ELIHU BIGELOW.

When the obligor in a bond becomes administrator of the obligee, the bond is suspended, and the debt due becomes assets in the hands of the debtor, as administrator.

THIS case was adjourned here for decision from the county of Licking. It was an action of covenant, and the material facts of the case are as follow:

On April 26, 1815, Oliver Bigelow sold to Elihu Bigelow, a tract of land, and covenants in writing were entered into, by which Oliver Bigelow agreed to convey the land, and Elihu Bigelow agreed to pay Oliver the purchase money, in installments of two hundred dollars on demand, and two hundred dollars yearly, from the date of the article, until the whole was paid.

During the lifetime of Oliver Bigelow, several payments were made, and indorsed on the article. But before the contract was completed, Oliver Bigelow deceased, and letters of administration on his estate were granted to Elihu Bigelow, in virtue of which he became possessed of his own covenant to Oliver Bigelow. In his administration account Elihu Bigelow represented that there

was due on this article to Oliver Bigelow the sum of one hundred and eighty dollars. Whilst acting as administrator, Elihu petitioned the court, under the statute, to complete the contract by ordering a conveyance, in which petition he alleged that the whole purchase money was paid.

Subsequent to this Elihu died, and the defendants became his administrators. It was also ascertained that Oliver left a will appointing the plaintiff his executor, who proved the will, and took letters testamentary. And having by some means obtained possession of the article of agreement, instituted this suit.

At the trial the jury found a special verdict, finding that the article was the deed of Elihu Bigelow, and that there was due upon it, to the estate of Oliver Bigelow, the sum of three hundred and nine dollars and sixty cents. And that the present plaintiff obtained the article without the consent of Elihu Bigelow or his administrators. Upon this special verdict, and an agreement of the other facts stated, the cause was reserved to be decided here.

*H. STANBERY, for the plaintiff:                    [139

The facts of this case are few, and yet so singularly complicated as to require a careful investigation. The principal difficulty is occasioned by the debtor of the intestate becoming also his administrator. There is one fact found by the special verdict, which must be taken as established, that the bond debt has never been actually paid.

The plaintiffs, who represent the obligee, have prosecuted their action upon this obligation. They show that a part of it is yet due, and this they claim to recover. The manner in which they possessed themselves of this instrument is wholly immaterial. If it evidence a subsisting debt due to their testator, or rather to them as his representatives, it of right belongs to them, and their title to it can not be disputed, at least in this action. It is unnecessary to cite authorities to this position. The well-known case in Vernon's Reports, in which the person who had *stolen* his deed from a counselor's table, and was enabled to protect himself with the legal advantage it gave him, will be recollected.

The plaintiffs then, affirmatively, show a right to recover on this bond. Let us see what the defendants have to object to this recovery. They say that when Elihu Bigelow, the obligor, became the administrator of Oliver Bigelow, the obligee, *eo instanti*, the bond merged, and the amount due upon it became assets

in his hands.   This ground can not be maintained as a defense to this action.

It is clear that the debtor obtains no advantage of his creditor, by administering upon his estate.   He does not stand in the situation of a debtor appointed the *executor* of his creditor.   In that case the old authorities are, that if the estate be solvent, the debt is absolutely merged and satisfied.   Needham's case, 5 Co. 30.   In the modern cases, it is not held to be an extinguishment of the debt in any event, except there be a plain intention to that effect expressed in the will.   But it has never been held that the granting of administration to the debtor worked this merger.   8 Co. 136; 1 Roll. 934; 1 Sid. 79; 1 Salk. 306, n. A.   The distinction between the cases is obvious.   In the first, the executor being appointed by the testator, he was taken, if nothing to the contrary appeared on the **140]** will, to have intended a release of the debt, as a \*recompense for the trouble cast by him upon the executor; but the administrator not being appointed by the deceased, no such intention can be presumed.   Com. Dig., Adm'r, 336, 337.

This debt was, then, not extinguished by this act, nor was it prejudiced.   The taking of administration by Elihu, the debtor, was of his own motion.   The law will intend it to have been for the benefit of his intestate, and will not suffer the estate to be prejudiced by the legal consequences of that act.   But the administrator can not sue himself, to recover the debt which is due from him individually, to the estate, or rather to himself in his representative capacity.   This inability to sue would give him, as debtor, an advantage which the law will not tolerate; and therefore, *in favor of the estate*, the creditor or heir may, if either choose to do so, hold him accountable for the amount of his debt as assets. But the debt is not to all purposes considered as assets.   In reality it continues a debt, inasmuch as it is not actually paid, and therefore, although the administrator, for the purposes of justice, is estopped from denying that it is assets, yet his securities are not. They are only liable for debts actually collected by him, or which he might have collected by proper diligence.   Their liability is not altered by the administrator being the debtor.   If the administrator were, for instance, insolvent, they would not be charged with this desperate debt.   They do not guaranty his responsibility as a debtor of the estate, but only his honesty and the faithful discharge of his duties.   I have gone into this detail, preparatory to

a view of this case in the light in which it should be regarded for the protection of the estate, the creditor, and the heir.

Before Elihu Bigelow connected himself with this estate, as administrator, he was a debtor to the estate by bond, for the payment of the consideration of a tract of land which he had purchased of Oliver Bigelow. The legal title to the land had been retained by Oliver, as security for the unpaid purchase money, and passed, at his decease, to his heir. This debt did not then rest upon the personal responsibility of Elihu; a fund was appropriated and retained for its security, over which the creditor had given the debtor no control, and which the law will not take from him until his debt be paid. Elihu administers upon the estate of Oliver. His *debt is not extinguished by that act, nor is it actually [141 paid. Indeed, Elihu as administrator, does not treat it as then paid. He does not place any money to the *credit* of the estate, as representing that debt. He does not *charge* the estate with any money paid out of his own funds on account of it, but he places it in his inventory on the footing of an unpaid debt.

It is contended that this act of administration operated an entire transmutation of the rights and liabilities which, prior to it, were incident to this bond. It is said, that although the debt is not extinguished, yet that the bond is merged, and can only be used to ascertain the amount. That it stands as if the bond were actually paid in full, and the amount of it has become assets; money collected and in the hands of the administrator; and that the individual obligor was discharged from all liability; his bond satisfied, and he of course entitled to a conveyance of the land, and put in a situation with regard to the fund, that enables him to control it, and place it beyond the reach of the original claim. These consequences would be manifestly injurious to the creditors and heirs of the estate; the fund is gone, and in the place of it is substituted the mere personal responsibility of Elihu Bigelow; for, I repeat it, in case of his insolvency, his securities could not be made to answer this debt. And this wrong is accomplished by the debtor himself. The heir and creditors are in no fault; they are not chargeable with any *laches;* they have done no act to alter their debt, and especially during the continuance of his administration, they never treated the debt as modified or paid. They did not choose to hold Elihu responsible for the money as actually received; and as soon as his administration is determined, the lawful executor of Oliver

Bigelow insists upon the bond, and refuses to be subrogated to an action for the money.

There is nothing, then, in the acts of the parties, to modify this debt, and under such circumstances, as a modification would work an injury to the estate, the presumption of payment to the administrator, which is made for the benefit of the estate, will not be applied.

It seems to me that the only necessary effect of the administration upon this debt, was to suspend the right of action. Whether 142] it should be considered paid and assets, would *depend upon the consequences of that presumption. If it were a debt originally resting on the sole responsibility of the debtor, the presumption of payment would be made, for that would place it upon the same footing; but if the debt originally were strengthened with other security, it would not.

Suppose a bond secured by mortgage. The obligor, who has no estate but the mortgaged premises, administers to the obligee. According to the doctrine of the opposite counsel, that act, by an inevitable necessity, carries with it a presumption of payment and merger of the bond. The bond is the principal, and the lien on the land, which is but the incident, is gone with it, and there remains the personal responsibility of the administrator, which the intestate, at the creation of the debt, would not rely upon, and which, in fact, is not worth a rush.

Another case suggests itself. A trespass upon the real estate of the intestate before his death; the trespasser becomes the administrator. What is the consequence with regard to this debt? It is not extinguished, nor can the presumption of payment apply to it, on account of its uncertainty. During the continuance of the debtor's administration, it can not be prosecuted by action, but as soon as his administration determines, it may be recovered by those who come after him and represent the estate; otherwise manifest injustice is done by the act of the debtor, and this the law will not tolerate. The same difficulty of applying the presumption of payment, occurs in all debts which happen to be uncertain and unliquidated in amount. These cases in illustration show clearly that this presumption is not necessary and inevitable, and that the right of action upon the original claim may survive, where the purposes of justice require that it should. Indeed, there are many instances where a right of action is temporarily suspended, and yet after-

ward capable of being asserted. Between an intestacy and the granting of administration, there is a total suspension. So in the case of an alien enemy, and others of a temporary disability. But again, this presumption of the payment of the debt, and that it is resolved into assets, is made for the particular emergency. The reason and propriety of its operation cease when the emergency is passed.

*The administration of Elihu Bigelow was temporary, and [143 the estate was not settled in his hands. The present plaintiffs have succeeded him, and finding this bond, instead of the supposed assets, have brought their action upon it. There is now no necessity for the legal presumption. The debtor has lost his character of creditor. He stands as he did before he administered, and so does the debt, for in fact it is yet due. Will the court, then, by a mere fiction of law, made for the benefit of the estate, and not intended to operate, except from an instant necessity, now when its operation is not needed, and would work an injury, oppose it to the recovery of this claim? And to what purpose, but to lead to multiplicity of action and the jeopardy of rights.

And here, however strong the presumption that the debt has become assets, might be of itself, yet now it can not be made. The special verdict is express, that *the bond* is now due; against that no presumption can be made.

It is further contended that the statement of Elihu Bigelow in his petition for a deed, and the finding of the court, show a payment of the debt. That anomalous proceeding can have no effect in any imaginable point of view upon this case as it now stands. The decree as stated in the defendants' notice was never carried into effect. It must either be referred to as evidence of the payment of the bond, or as an adjudication by which the bond was merged.

Suppose it to be proper evidence of the payment, it is evidence in relation to a fact established beyond controversy, by the special verdict, and which can not now be contradicted. This is not a motion for a new trial, on the ground of a verdict contrary to evidence, or by reason of newly discovered testimony. Any matter, then, to impeach the facts found by this verdict can have no relevancy.

The same objections go against the decree as evidence of a merger of this bond, for the jury have found it to be still due and subsist-

ing. And, indeed, without this finding, the decree would not have that effect, or any other, to prejudice the rights of the plaintiffs, for obvious reasons. It was a proceeding wholly *ex parte,* without mutuality, and founded on the debtor's false or mistaken statements. It can, therefore, have no operation here. 1 Stark Ev. 185, 195.

144] *DILLE, for defendants:

The power and duties of an administrator in this state are defined by statute, and not as in England regulated by the usages of the spiritual courts and the principles of the civil law. Our statute, passed January 25, 1816, provides, that if after an administrator has been appointed, " it shall appear to the court that any last will and testament was made by the deceased, and the executor, or executors, therein named shall prove the same agreeably to law, and request letters testamentary thereon, then the court shall require the administrator, or administrators, to deliver such letters of administration, together with his or their proceedings, to the satisfaction of the court." 14 Ohio L. 151. The " act defining the duties of executors and administrators," passed February 11, 1824, makes no material variation from the act of 1816, in this respect.

In England, it was formerly held that " if the testator makes a will, and the ordinary, without taking notice of any such will, grants administration to another, and afterward the executor comes in and proves the will, such executor shall regularly avoid all mesne acts done by the administrator," and the reason which is given is, " that the executor, by being made such, had an interest which the ordinary could not deprive him of." Plow. 277 ; 2 Bac. Abr. 411. And it still seems to be the doctrine, from the same authority, that the administrator is liable under such circumstances to the executor in an action of trespass, even though the will was not discovered until after administration granted; but if, in such case, " he paid debts, legacies, or funerals, which the executor was bound to pay, he shall recoup so much in damages." Now, compare these principles with the provisions of our statute, and we will find that the common, or rather civil law maxims, do not apply in a case of this kind in this state.

But if the analogies of the common law have any weight here, it may be well to inquire what were the decisions in case administration was improperly granted, afterward revoked, and a new

administrator (the next of kin, or such other person legally entitled) is appointed. In Packman's *case, 6 Coke, 18, it was [145 decided that even though the first administrator fraudulently sold the goods of the deceased during the pendency of a citation to revoke his power, in order to defeat the plaintiff in the spiritual court of the effect of his suit, that the first administrator had the absolute property of the goods in him, and without question he might give them to whom he pleased. If the gift be by covin, it shall be void by the statute 13 Eliz. against a creditor, but it remains good against the second administrator.

I have cited the above provisions of the statute, and the case of Packman, from Coke, to support me in this position, that the administrator, who is appointed, and takes upon himself the administration of the deceased's estate, before the discovery of the will, has such a property in the personal estate of the deceased, and such authority over his personal rights, that his acts are of such validity that they shall bind the executor who succeeds him. And this I strongly infer from the statute, which requires such administrator to return to the court his proceedings. And this is required that the court may know how far he hath administered, how far he is liable to be charged, and how far such executor may be exempted from liability by reason of such former administration. If, then, this position be correct, how does this case stand? For I presume it will not be denied that when administration is granted to a person who is the debtor (by bond, for instance) of the intestate, that the amount becomes merged, and the amount due upon it is chargeable upon the administrator as so much assets in his hands. It must be merged from necessity, for assets, to that amount, are, in truth and in fact, in his hands, and the bond can only be referred to as evidence of the amount. The administrator can not bring suit against himself. The making of him administrator is the act of the law, and the merger of the bond is the effect consequent upon that act. Now, when Elihu Bigelow administered upon the estate of Oliver Bigelow, deceased, this bond came into his hands. It became a debt which he owed unto himself, because the obligor and obligee were united in one and the same person. Yet if he failed to account for this sum, he was liable, either to the executor who succeeded him, or to the creditors of Oliver Bigelow, upon a *devastavit* (see also Packman's case), or upon his administration *bond. So did he consider it when he charged himself [146

133

with the amount due upon the bond in the inventory which he returned to the court; and so was it considered as well by the court as himself, when he petitioned, under the "act providing for the execution of real contracts in certain cases," for a completion of this contract. The court were satisfied that the bond was paid, because they knew that the money was in the hands of the only person then known who was entitled to hold this bond, or who had the property of it. Upon this the court was authorized to declare, in the minutes of its proceedings, that it was satisfied that the bond had been paid, and to direct a person to make a deed pursuant to the contract. This was the situation in which the plaintiff, as executor, found the estate of his testator, when it came to his hands, after the partial administration of Elihu Bigelow. And if the position which I endeavored to establish in the foregoing part of this argument be true, that the executor, in a case of this kind, is bound by the acts of his preceding administrator, then the bond in this case was so merged that the present action could not be maintained upon it, and the verdict should be set aside. It is not important to this inquiry to determine how far the defense upon which the present defendants rely, would have been waived, if they, as the personal representatives of Elihu Bigelow, deceased, had, ignorant of the law, voluntarily surrendered to the present plaintiff the bond in question; for the jury have found that it was obtained by him without the consent of Elihu, or of his administrators, so that no right has been waived—no defense abandoned. It was argued at bar, that were the bond in this case merged, it would destroy the lien of the heirs of Oliver to the land. But what is the nature of that lien? In all cases of this kind it may be extinguished by the act of the administrator. For as soon as he receives the whole amount of the purchase money, equity declares the lien to be at an end, and decrees a conveyance of the legal title to the obligee. And the law will not studiously support a bare right that is attended with neither advantage nor value. The bond is the property of the executor or administrator, and though the legal title be in the heirs to strengthen their lien, yet he may at any time extinguish and forever defeat it.

**By the COURT:**

The *first* question made is, whether the appointment of a debtor

administrator extinguishes the debt, and *eo instanti* turns it into assets.

*Secondly.* If the debt is only suspended, whether the application for a deed by the administrator to himself, as obligor, and an order granted, destroy the right of action on the bond.

In this case, it appears that during the lifetime of Oliver and Elihu Bigelow, they entered into articles of agreement, by which Oliver covenanted, upon the payment of a certain sum of money by Elihu, to execute a conveyance for a tract of land therein specified. A part of the money was paid in the lifetime of Oliver. Administration on his estate was granted to his brother Elihu.

It is now a well-settled principle that if a creditor make his debtor executor, it is not absolutely an extinguishment of the debt, but remains as assets in his hands. Dorchester *v.* Webb, Croke Car. 372. It is, however, *quasi* a release at law, because he can not be sued. 1 Com. Dig. 337. The same rule must apply to administrators who can not sue themselves any more than executors. Both are trustees; the one under the law, the other by the appointment of the testator. In the principal case, a will was discovered and admitted to probate, and the administrator was superseded by the executor. Counsel suppose the debt or duty was only suspended, while the debtor was *acting as administrator, and that a right of action immediately accrued to the executor when the bond came into his possession. The law appears to be otherwise. Personal actions once suspended are always suspended. Croke Car. 372. If the bond was once assets, no act of the parties could turn them back to an obligation. Chief Baron Comyn, who is himself said to be an authority, has recognized the principle as a sound one that a personal thing suspended is extinct. 1 Com. Dig. 337. The principle under consideration was decided in Winchop *v.* Basset et al., 12 Mass. 199, the court says, "the executor having voluntarily assumed the trust, which prevents any one from suing, and being unable to sue himself, he shall be considered *as having [148 paid the debt, and as holding the amount in his hands as administrator." By the same case, securities in the bond were considered accountable for such assets. The discovery of a will, and the appointment of an executor, only operate as a repeal of the grant of administration, which did not avoid all mesne acts. A repeal upon citation, although the goods were sold *pendente lite*, does not render the act void. Croke Eliz. 458; Salk. 38. Consequently the applica-

tion, on the part of the administrator, to have the contract specifically executed, and the record of proceedings under it, are not rendered void by the discovery of a will and the appointment of an executor, who accepted the trust. Every act of the administrator has the same validity as if he had not been superseded, but had continued to perform his duties until final settlement and distribution of the estate. But the record of the proceedings, upon the petition of the administrator for a deed, is conclusive against the right of recovery in this action. The court had jurisdiction, and have found the payment of the money, which can not be controverted, unless this order or decree is void, and this is not pretended; it, being a solemn judgment of a court of competent jurisdiction, is no longer open for controversy. The decree can not be open for inquiry, whether the obligee made payment or not. The court has already adjudged that, and the record shows it. A judgment of the law is not to be controverted by collateral matters, for they are intended. 6 Cok. 38; 11 Mass. 227; Jackson, ex dem. Goforth, *v.* Longworth, 4 Ohio, 129. We can not in this collateral way go into an inquiry concerning the propriety or impropriety of extending the equity of the statute to an obligee who is administrator. The policy of admitting a trustee of the law to make this application, where his personal interest must come in conflict with his representative duties, would, as an abstract principle, be very questionable; but the decision has been made, and in this action can not be controverted.

The legal maxim, *omnia præsumuntur rite et solemniter esse acta, donec probitur in contrarium*, applies with force to this as well as to every other record. The court are of opinion that the facts agreed are conclusive against the plaintiff's right of recovery upon this **149]** bond. Circumstances *may exist which enable the heir or creditor to be relieved against the effect of this order or decree, by applying to a different jurisdiction.

Judgment of nonsuit.